UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DISTRICT
COVINGTON

CIVIL ACTION NO. 2:09-CV-076-KKC

JULIA L. EVANS                                                                                                      PLAINTIFF

v.                       **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security                                                    DEFENDANT

\*\*\*   \*\*\*   \*\*\*

This matter is before the Court on cross motions for summary judgment filed by Plaintiff Julia L. Evans ("Evans") and Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. 11, 12. For the reasons set forth below, the Court finds that the Commissioner's decision denying Evans' claim for benefits is supported by substantial evidence. Accordingly, the Court will grant the Commissioner's motion for summary judgment.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Evans filed applications for Social Security Disability and Supplemental Security Income benefits on July 6, 2005. AR 31, 57. Evans claimed a period of disability beginning on April 1, 2004 due to anxiety, depression, obesity, diabetes, hypothyroidism, arthritis and hypertension. AR 19. At the time of her application, Evans had past relevant work experience as a collections representative, hotel reservationist, and most recently as a medical assistant. AR 663-64. The Social Security Administration denied Evans' claims initially and again on reconsideration. AR 33, 40. Evans then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 6, 2008.

Evans appeared at the hearing and testified as did William T. Cody, a vocational expert ("VE"). AR 48-55. On August 14, 2008, the ALJ issued an unfavorable decision, denying Evans'

claim for benefits. AR 15-28. Evans then requested review of the ALJ's decision by the Social Security Administration's Appeals Council which denied the request. AR 5-8. Because Evans properly exhausted all available administrative remedies before filing suit in this Court, this case is now ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).
A district court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

2

## B. Overview of the Process

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimants impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimants' RFC, the inquiry proceeds to step four. At step four, the ALJ must determine whether the claimant can perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f).

At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

At step one the ALJ found that Evans has not engaged in substantial gainful activity since April 1, 2004, the alleged onset date. AR 20. At step two, the ALJ then found that Evans' had the following severe impairments: (1) depression; (2) anxiety; (3) obesity; (4) diabetes; and (5) hypertension. *Id.* In considering these impairments, the ALJ determined at step three that Evans did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 21. The ALJ noted that there was no evidence of end organ damage secondary to hypertension as specified in Listing 4.00H. The ALJ also found that the record did not support listing level complications resulting from Evans' diabetes under Listing 9.08.

In considering Evans' mental impairments, the ALJ found that they did not meet Listings 12.04 or 12.06. Specifically, the "paragraph B" criteria were not met because Evans had only mild limitations in activities of daily living, moderate limitations in social functioning, moderate limitations in concentration, persistence, or pace and no evidence of frequent episodes of decompensation of extended duration. AR 21-22. The "paragraph C" criteria were not met because the evidence did not establish that Evans is unable to function outside of the home or outside of a highly structured environment. AR 22.

Prior to step four, the ALJ determined that Evans has the RFC "to perform medium work...if she is limited to occasional ramp/stair climbing, and kneeling, and is restricted from ladder, rope, and scaffold climbing. The claimant is limited to simple task instructions in a routine, object-

4

focused work setting." *Id.* Evans testified that she was so depressed in 2004 that she could not even attend therapy and claimed that she tried to commit suicide in 2007. However, the ALJ noted that there were no treatment records for her depression from 2004 to 2006. AR 23. In addition, the ALJ found that when Evans did seek treatment, it offered her some relief although she experienced ups and downs. *Id.* Evans also testified that she had not taken any long trips since her onset date, but apparently forgot about a trip she took to Florida in 2006. *Id.* Evans testified that she did not like being around other people. However, she also testified that church members visited her at home and that she visited her uncle in Owenton, Kentucky fairly frequently. *Id.* Based on the evidence in the record, the ALJ found that Evans' testimony about the intensity, persistence and limiting effects of her symptoms was not credible. *Id.*

The ALJ then addressed an August 2006 opinion from Dr. Schrand opining that Evans was not capable of gainful employment until her weight and blood sugar could be better controlled. AR 24, 255. Dr. Schrand based this opinion on Evans' early diabetic neuropathic changes, osteoarthritis related to her obesity and minimal coronary artery disease. *Id.* However, Dr. Schrand's most recent treatment notes from April 2005 showed a normal neurological exam. AR 257. Adenosine testing in July 2003 showed normal perfusion, wall motion and ejection fraction. AR 277. In addition, Evans represented during her consultative examinations that she had never been hospitalized because of her obesity and claimed that she was assessed as being able to perform at least mild to moderate amounts of sitting, standing, and walking. AR 187-191. Accordingly, the ALJ found that Dr. Schrand's opinion was inconsistent with the objective medical evidence in the record and his own treatment notes. AR 24.

The ALJ also considered treatment records from Health Point Family Care. The first of these records from May 2006 indicates that Evans had not seen any health care provider for two years but

had gotten all of her prescriptions refilled.[1]  AR 451.  Evans was also advised to lose weight.  When she followed up in January 2008, laboratory results were good, she was trying to lose weight, offered no complaints and physical examination was normal.  AR 630-35.  Evans was examined in the ER on August 2, 2007 and appeared comfortable with no reports of pain, no musculoskeletal tenderness or edema and no apparent motor or sensory deficits.  AR 504-06.

With regard to Evans' psychological problems, the ALJ noted that a consultative psychological evaluation was performed in September 2005.  Evans reported having suffered from depression and anxiety since the 1980's.  AR 192-99.  The ALJ noted that despite these long term problems, Evans remained able to work until 2004.  At the time of the consultation, Evans was not in a treatment program and had never been a psychiatric inpatient.  In reviewing treatment notes from Northkey, the ALJ determined that Evans responded well to medication and therapy for her anxiety and depression.  She also noted that Evans completed vocational training in 2003 to become a medical assistant.

Evans' therapist, Janet McNeel ("McNeel") opined that Evans was unable to work and that "she has serious physical problems, diabetes and hypertension, which are poorly controlled and most likely seriously complicate her mental health problems as well."  AR 354-55.  However, the ALJ found evidence of steady improvements in Evans' mental health treatment and her daily activities.  The ALJ also noted that Evans' daily activities did not support McNeel's impression of panic attacks or agoraphobia.  As a result, the ALJ did not accord the opinion significant weight.

The ALJ also considered an opinion from Ms. Wofford ("Wofford"), a nurse practitioner at Northkey, that Evans' was totally disabled by major depressive disorder.  AR 363.  The ALJ rejected this opinion as inconsistent with the longitudinal medical evidence of record showing improvement

---

[1] This record also indicates that Evans was taking care of her husband who is disabled.

in Evans' mental condition with appropriate therapy and medication. AR 26. Finally, the ALJ found that Evans' testimony was not entirely credible. AR 27.

At step four, the ALJ determined that Evans was capable of performing her past relevant work as a collection clerk, reservation clerk, or medical assistant. AR 27. Accordingly, the ALJ determined that Evans was not disabled as defined by the Social Security Act. AR 27-28.

D. Analysis

1. The opinions of Ms. Wofford and Ms. McNeel.

Evans first received mental health treatment at Northkey in 1983. During the course of her treatment at Northkey, Evans was seen regularly by her therapist and by a nurse practitioner. Evans claims that the ALJ gave inadequate consideration to their opinions that she was disabled and unable to work because of her mental impairments.

Because nurse practitioners and therapists are not "acceptable medical sources" under Social Security Regulations, they are not considered treating sources and their opinions are not entitled to controlling weight. *See* SSR 06-03p, 2006 SSR LEXIS 5, *3-4, 2006 WL 2329939 (Aug. 9, 2006). Social Security Ruling ("SSR") 06-03p indicates that the Social Security Administration needs "evidence from 'acceptable medical sources' to establish the existence of a medically determinable impairment" and that "only 'acceptable medical sources' can give us medical opinions." *Id.* at *3. However, opinions from nurse practitioners and therapists are "other sources" whose opinions may be used as evidence of the severity of an individual's impairments and how their impairments affect their ability to function. *Id.* at *4. These opinions are "important and should be evaluated...along with the other relevant evidence in the record." *Id.* at *8. As a result, the adjudicator "generally should explain the weight given to opinions" of "other sources" to allow "a claimant or subsequent reviewer to follow the adjudicator's reasoning." *Id.* at *15.

7

Evans' nurse practitioner, Ms. Wofford, opined in April 2006 that "I evaluated Evans on 3/23/06 and diagnosed her with major depressive disorder. She is totally disabled from gainful employment at this time due to the disorder." AR 363. While the ALJ considered this opinion, she explained that Evans was just beginning to reestablish mental health treatment after a two year absence when the opinion was rendered. The ALJ acknowledged that Evans had experienced significant depression in her untreated state. However, in reviewing the evidence in the record including treatment notes, the ALJ determined that ongoing therapy and medication management had resulted in significant improvement in Evans' mental state. Based on these improvements, the ALJ found that the April 2006 assessment did not accurately reflect Evans' condition while in treatment. Furthermore, the ALJ found the opinion was not accurate when viewed over the longitudinal record. Accordingly, the opinion was not accorded significant weight.

In reviewing the evidence in the record, the Court finds that the ALJ's decision to not accord significant weight to Wofford's opinion is supported by substantial evidence in the record. The Court is mindful of the fact that it should uphold the Commissioner's decision even where there is substantial evidence in the record that would have supported an opposite conclusion where the ALJ's decision is supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003).

Here the ALJ's hearing decision was based on subsequent treatment records and recognized that Wofford's opinion was rendered when Evans was in the beginning stages of resuming mental health treatment after a nearly two year break. Furthermore, the ALJ emphasized that Evans had dealt with similar mental health problems for more than twenty years, but had remained able to work. The Court also notes that opinions on some issues such as whether a claimant is disabled are not medical opinions but are opinions on issues that are reserved for the Commissioner because they

are administrative findings that are dispositive of a case. *See* 20 C.F.R. §§ 404.1527(e); 416.927(e).

Evans also relies on two letters from her therapist, Ms. McNeel, in support of her claim for disability. The first of these letters was written in May 2006. AR 355. According to the letter, "[i]n the three months since Julie has re-initiated treatment, she is still exhibiting serious depressive and anxiety symptoms to the extent that I do not believe that she is currently able to work at all." *Id.* McNeel also stated that it was her "understanding that...[Evans] has serious physical problems, diabetes and hypertension, which are poorly controlled and most likely seriously complicate her mental health problems as well." *Id.*

In reviewing the evidence in the record, the ALJ noted that Evans' condition was steadily improving as a result of her treatment, she was engaging in active daily activities, socializing and engaging in various hobbies. While Evans was hospitalized from August 2-7, 2007 for increased depression with suicidal ideation, the ALJ noted that Evans' depression was described as situational and controllable through continued treatment and medication. The ALJ also found that after Evans' Prozac dosage was increased, she improved within four days and was permitted to return to Northkey as an outpatient.

By August 2007, Evans had a bright and more hopeful outlook on life. Similarly, records from October 2007 showed Evans managing her stressors well, not feeling overwhelmed and able to engage in activities helping her to cope. In November, McNeel noted that Evans was able to maintain a positive outlook from visit to visit and described her condition as stable. While the ALJ recognized various other periods where Evans experienced an increased level of depression, she determined that medication adjustments and continued therapy were leading to steady progress.

McNeel submitted a second letter in July 2008 indicating that when Evans suffered relapses "the symptoms are at a level where she would be unable to function in an employment setting."

9

AR 637. Furthermore, McNeel opined that Evans "would have difficulty maintaining gainful employment when she frequently experiences sleep disturbance...psychomotor retardation, loss of energy, feelings of worthlessness and hopelessness, poor concentration, and recurrent thoughts of death during her bouts of severe depression." *Id.* McNeel also indicated that "[t]his is coupled with the panic symptoms which have resulted in decreased ability to travel beyond certain geographic areas without experiencing increased anxiety." *Id.*

In addressing this opinion, the ALJ initially noted that McNeel's claims of panic attacks and agoraphobia were not supported by the evidence in the record. In making this finding, the ALJ primarily relied on the frequency with which Evans left her home to engage in her daily activities including visiting family friends, going shopping, conducting yard sales and babysitting for her neighbor's daughter. The ALJ also noted that the opinion was not consistent with Evans' treatment at Northkey over time. As a result, it was not accorded significant weight. In reviewing the ALJ's opinion, the Court finds that substantial evidence supports the decision according McNeel's opinion little weight. Furthermore, the ALJ's hearing decision adequately explained the reasons for giving McNeel's opinion little weight.

**2. Dr. Schrand's opinion.**

Evans also asserts that the ALJ erred by failing to give adequate weight to the opinion of Dr. Schrand, her treating physician. On August 4, 2006, Dr. Schrand wrote a letter on behalf of Evans' application for benefits. AR 255. Dr. Schrand indicated that Evans suffers from medical conditions including type II diabetes, morbid obesity, depression, hyperlidemia, minimal coronary artery disease, and osteoarthritis particularly of her lower extremities as it relates to her obesity. *Id.* He also claimed that she had early neuropathic changes related to prior poor control of her diabetes. *Id.* As a result, he opined that:

[a]t this particular time given her multiple medical conditions, as a whole it is felt that Julie is not currently capable of gainful employment, and until such time as her weight and blood sugar can be better controlled and her condition overall improve that would be the only way she could return to gainful employment, and that would be in the far distant future.

*Id.*

Under applicable Social Security Administration ("SSA") regulations, the opinions of treating physicians are entitled to controlling weight if they are "well supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting 20 C.F.R. § 404.1527(d)(2)). If the opinion of a treating source is not entitled to controlling weight, the ALJ must still apply certain factors to determine what weight the opinion should be given. *Id.* These factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.

*Meece v. Barnhart*, 192 Fed. App'x 456, 461 (6t Cir. 2006)(unpublished)(quoting 20 C.F.R. §§ 404.1527(d)(2)-(d)(6).

The ALJ rejected Dr. Schrand's opinion because it was not supported by the objective medical evidence in the record including Dr. Schrand's own treatment notes and the notes of his physician's assistant James Ravencraft.[2] For the reasons set forth below, the Court finds that this determination was not in error.

The most recent treatment records from Dr. Schrand's office prior to his opinion are from April 29, 2005 and note that Evans had not been seen in his office for two years. AR 257. In

---

[2] The record also contains a letter from Ravencraft dated May 20, 2005 stating that Evans was "currently unemployed and because of her medical condition has been unable to maintain gainful employment." AR 256.

addition, Dr. Schrand's neurological exam of Evans was revealed that she functioned normally. None of the other records from Dr. Schrand's office appear to support his opinion that Evans was completely disabled because of her medical conditions. AR 255-58. Furthermore, while the ALJ recognized that Evans had a history of hypertension, an Adenosine test conducted in July 2003 gave an impression of moderate reversible perfusion, some left ventricular dilation between rest and adenosine stress consistent with multi-vessel ischemia and normal wall motion and ejection fraction. AR 277.

The ALJ also found that Dr. Schrand's opinion was inconsistent with a consultative examination conducted by Dr. Fritzhand on August 30, 2005. AR 187-91. Evans indicated to Dr. Fritzhand that she had a lifelong history of obesity but admitted having never required hospitalization to deal with this condition. AR 187. She also acknowledged never having required hospitalization for diabetes control. Evans also reported having problems with her back and neck beginning between 1989 and 1997. *Id.* However, she acknowledged that she had never undergone MRI studies or required musculoskeletal hospitalization. *Id.* Evans also indicated that she had a six year history of chest pain. *Id.* However, she related that she got "a real sharp pain" in the substernal area only a few times per month usually subsiding within one hour. AR 187-88. She indicated that this pain was relieved by Isordil and was not related to exertion. AR 188. Evans also claimed a thirty year history of hypertension. *Id.*

Upon examining Evans, Dr. Fritzhand observed that "[f]unduscopic examination is completely normal without hypertensive or diabetic changes." AR 189. Neurological examination was also completely normal. *Id.* In examining Evans' back, it was noted that "[t]here is no evidence of paravertebral muscle spasm, and percussion of the lumbar spinuous processes is not associated with tenderness" and straight leg testing was normal. *Id.* In rendering his final impression, Dr.

Fritzhand noted that "[t[here are no joint abnormalities as heat, swelling and capsule thickening are absent. There is no evidence of nerve root damage as all deep tendon reflexes are brisk, and there is no evidence of muscle atrophy." AR 190. While Dr. Fritzhand acknowledged that Evans appeared depressed and speculated that he would not be surprised if her daily activities were restricted by her mental status, he opined that Evans appeared "capable of performing at least a mild to possibly moderate amount of sitting, ambulating, standing, bending, pushing, pulling, lifting and carrying heavy objects." AR 190-91.

It is telling that Evans dealt with the majority of the impairments that she relayed to Dr. Fritzhand for many years and remained able to work. In fact, Evans acknowledged to Dr. Fritzhand that many of these conditions did not require hospitalization or aggressive treatments. The ALJ also relied on Evans' daily activities in finding that Dr. Schrand's opinion was inconsistent with the evidence in the record. Despite her impairments, Evans remained able to visit with family and friends, drive her vehicle and take care of her disabled husband. She also frequently babysat her neighbor's daughter, went shopping and conducted yard sales.

Later medical records are also inconsistent with Dr. Schrand's opinion. In August of 2007, while at the ER, Evans reported no pain, appeared comfortable and had no musculoskeletal tenderness or edema. January 2008 notes from Health Point show good laboratory results and normal findings on physical examination. Finally, while the ALJ recognized Evans' history of depression, he found that this impairment dated back more than two decades and had allowed her to work until 2004.

Based on the foregoing evidence and considering the limited objective medical findings supporting Dr. Schrand's opinion, the Court finds that the ALJ did not err by rejecting his opinion. In addition, the Court finds that the ALJ gave an adequate explanation for rejecting Dr. Schrand's

opinion.

### 3. Listing 12.06

Evans argues that the statement by McNeel in her 2008 letter that she "simply falls apart with any negative development...cannot relax or seemingly control her emotions when a new crisis unfolds," supported a finding Listing 12.06 was met. AR 625. Evans claims that this statement indicates that the "paragraph C" criteria are met because she is unable to handle any additional stressor without decompensating, a fact which she claims the ALJ's decision ignored.

The Court disagrees with Evans' arguments and finds that the ALJ properly applied the "paragraph C" criteria. Listing 12.06 covers anxiety-related disorders and "[t]he required level of severity for these disorders is met when the requirements in *both* A and B are satisfied, or when the requirements in *both* A and C are satisfied. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06. For the "paragraph B" criteria to be satisfied, Evans was required to show at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration. *Id.* at § 12.06(B)(1)-(4). Based on the evidence in the record, the ALJ correctly found that Evans had only mild limitations in activities of daily living.

With regard to social functioning, the ALJ found moderate limitations. However, she noted that Evans frequently babysat her neighbor's daughter, went to the store, spent time with her sons and visited other family members. Evans also attended church, went grocery shopping, held yard sales and visited a casino. The ALJ correctly determined that these activities are not consistent with a marked limitation in social functioning. The ALJ next determined that Evans had a moderate limitation in concentration, persistence, or pace. This finding was based on Evans testimony that she

14

could read a book, could manage her anxiety to drive, played games on the computer, conducted genealogy research and held yard sales. Finally, the ALJ found that there was no evidence of frequent episodes of decompensation of extended duration. In reviewing the evidence in the record and the ALJ's rationale, the Court finds that the ALJ's determination that the "paragraph B" criteria were not satisfied is supported by substantial evidence in the record.

The ALJ also found that the "paragraph C" criteria was not met. To meet this criteria, Evans had the burden to establish that her anxiety results "in complete inability to function independently outside the area of" her home. *Id.* at § 12.06(C). The ALJ addressed the "paragraph C" criteria and determined that Evans' daily activities did "not support inability to function outside the home or outside of a highly structured environment." The Court finds that these findings are supported by substantial evidence in the record.

### III.   CONCLUSION

For the reasons set forth above, the Court holds that substantial evidence supports the Commissioner's decision denying Evans' claim for benefits. Accordingly, it is **HEREBY ORDERED** that:

(1)   Plaintiff's motion for summary judgment (R. 11) is **DENIED;**

(2)   The Commissioner's motion for summary judgment (R. 12) is **GRANTED;** and

(3)   **JUDGMENT** in favor of the Commissioner will be entered contemporaneously herewith.

Dated this 20th day of April, 2010.



**Signed By:**

*Karen K. Caldwell*

**United States District Judge**

15